**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SHAMSUDIN HUSSEIN MOHAMMED,

    Petitioner,

v.                                                             No. 2:26-cv-00874-SMD-KK

MARKWAYNE MULLIN,[1] *et al.*,

    Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS MATTER** is before the Court on Petitioner's Pro Se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241.  Doc. 1.  The Court has reviewed the parties' submissions, the record, and the relevant law, and for the reasons set forth below, the Petition is **GRANTED**.

**BACKGROUND**

Petitioner Shamsudin Hussein Mohammed, a citizen of Somalia, is currently in the custody of Immigration and Customs Enforcement ("ICE") at the Otero County Processing Center in Chaparral, New Mexico.  Doc. 1 at 1.  Petitioner first entered the United States in 2001.  Doc. 5 at 2.   At that time, Immigration and Naturalization Services ("INS") served Petitioner with a notice to appear.  Petitioner appeared and filed an application for asylum and withholding of removal.  On June 16, 2001 an immigration judge ordered Petitioner removed.  *Id.*  Over a year later, on September 10, 2002, INS arrested Petitioner on a final order of removal and placed him in custody. *Id.* Petitioner was released on an order of supervision approximately seven months later.  *Id.* Petitioner applied for temporary protected status multiple times.  *Id.* at 3.  United States Customs and Immigration Services ("USCIS") granted his request on September 22, 2009.  *Id.*   His

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the case caption shall be updated to reflect that Markwayne Mullin is the Secretary of Homeland Security.  All future filings should be in the name of the substituted party.

protected status expired on September 17, 2015. *Id.* USCIS denied Petitioner's subsequent request for temporary protected status. *Id.* Petitioner was re-detained on March 14, 2017, but the record does not elucidate how long he remained in custody. Petitioner does allege that when he was released it was on an order of supervision. Doc. 1 at 2. During the pendency of these immigration proceedings, Petitioner built a life in the United States. He dutifully attended immigration check-ins and has no criminal history. *Id.* at 6. ICE arrested Petitioner at one such check-in and he has remained in custody since November 13, 2025. *Id.* at 5.

Respondents do not dispute the material facts. *See generally* Doc. 5. Nevertheless, Respondents object to release and contend that Petitioner has failed to establish that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 10. Respondents admit that "there are not travel documents yet," but insist that "mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* (quoting *Manjulaben v. ICE*, No. 4:25-CV-02252, 2025 WL 2977713, at *2 (N.D. Ohio Oct. 22, 2025)).

## DISCUSSION

This Court has jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A district court may grant a writ of habeas corpus to a petitioner who demonstrates that "[h]e is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3).

I.    Statutory Framework: 8 U.S.C. § 1231

Under 8 U.S.C. § 1231(a)(1), the Government has a 90-day period in which to remove a noncitizen after a removal order becomes final. If the Government is unable to effect removal

2

within that 90-day period, continued detention becomes discretionary. *See* 8 U.S.C. § 1231(a)(6). Indefinite detention, however, is not permitted. *Zadvydas*, 533 U.S. at 689 ("In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention."). In *Zadvydas*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700. If removal is not practically attainable, detention no longer serves its statutory purpose of 3 "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court established a "presumptively reasonable period of detention" of six months "for the sake of uniform administration in the federal courts." *Id.* at 701. After this six-month period, if the noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing. *Id.* If the Government cannot establish a significant likelihood of removal in the reasonably foreseeable future, continued detention is no longer authorized by statute. *Id.* at 699–700. In that case, the Government can continue to keep tabs on the noncitizen through reasonable conditions of supervision while it continues removal efforts. Courts typically consider the cumulative time spent in detention when evaluating a habeas claim challenging detention as unreasonable per *Zadvydas*. *Vo v. Bondi*, No. 2:25-CV-02244, 2025 WL 3653722, at \*3 (W.D. Wash. Dec. 17, 2025) ("The presumptively reasonable period of detention does not reset each time a noncitizen is detained; rather, the aggregate time in detention post removal order is considered."); *see, e.g.*, *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL 2898967, at \*8 n.5 (N.D. Cal Oct. 10, 2025); *Bulle v. Wesling*, No. 26-CV-019, 2026 WL 183840, at \*4 (D.R.I. Jan. 23, 2026).

II.    Respondents' Continued Detention of Petitioner Violates the Fifth Amendment.

The Court finds that Petitioner's continued detention violates his Fifth Amendment rights. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *Garcia Domingo v. Castro*, 806 F. Supp. 1246, 1251–52 (D.N.M. 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Though the Government "may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," that "limited period" cannot be indefinite. *Demore v. Kim*, 538 U.S. 510, 527 (2003). As the length of detention stretches on, an individual's due process interests escalate and the government's burden to justify continued detention mounts. *Id.* at 529; *Jennings*, 583 U.S. at 310–11; *Mohamed v. Sec'y Dep't of Homeland Sec.*, 376 F. Supp. 3d 950, 957 (D. Minn. 2018).

Petitioner has been detained for at least 13 months.[2] Respondents are now outside the presumptively reasonable six-month detention period. *Zadvydas*, 533 U.S. at 695. Petitioner has established that the Government's repeated attempts to remove him across the past 25 years have been fruitless. Respondents broadly assert that their inability to secure travel documents does not warrant release, yet they fail to provide any evidence suggesting that they have, in fact, attempted

---

[2] Petitioner spent seven months in custody throughout 2002 and 2003. He has now endured another six months in custody. The total length of detention is likely longer than 13 months, however, because of the 2017 detention, which was for an indeterminate period.

to secure those documents.   Respondents have similarly neglected to inform the Court of communications they have had with Somalia or alternate countries.   Thus, the assertion that removal is reasonably foreseeable is entirely speculative and unfounded.

Moreover, in denying Petitioner the most fundamental of rights, the Government has offered neither justification nor process.   It was the Government itself that decided to release Petitioner and revocation of that determination requires it to notify the Petitioner of this change in status and provide an informal interview.   8 C.F.R. § 241.13(i)(3).[3]   Respondents do not explain what change in circumstances suggest that removal is now likely and the Court cannot discern a meaningful purpose justifying Petitioner's ongoing detention; there is no evidence that Petitioner is a flight risk or a threat to the community, and he has been in the country for 25 years without incident.   *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) ("In other words, Respondents did not identify any facts to support that ICE re-detained Mr. Nguyen based on changed circumstances that would show his removal to be significantly likely in the reasonably foreseeable future.").   Again, Respondents do not dispute these facts.   *See* Doc. 5 at 2.   Respondents have therefore violated Petitioner's Fifth Amendment rights by keeping him detained indefinitely without sufficient process or any proffered explanation for what purpose detention serves. *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981) ("Detention pending deportation seems properly analogized to incarceration pending trial or other disposition of a criminal charge, and is, thus, justifiable only as a necessary, temporary measure."). Because Respondents have offered no independent legal basis for continued custody, Petitioner is entitled

---

[3] Respondents put forth that Petitioner failed to exhaust his administrative remedies and submit a written request for review of his continued detention. Doc. 5 at 11.  Respondents rely on 8 C.F.R. § 241.13(d) for this proposition.  Of course, administrative exhaustion does not interfere with the jurisdictional basis for reviewing habeas petitions, *see, e.g., Soberanes v. Comfort,* 388 F.3d 1305, 1310-11 (10th Cir. 2004), but even setting aside that settled-rule, Respondents' argument remains unavailing.  Section 241.13(d) does not pertain to individuals who have been released from custody on an order of supervision.  For those revocations, Respondents must, as they implore Petitioner to do, comply with the procedures set forth in § 241.13(i).

to relief pursuant to § 2241.  *Nguyen* 788 F. Supp. 3d at 152.

## CONCLUSION

It is hereby **ORDERED**:

1) The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**;

2) Respondents shall release Petitioner within **48 hours** of this Order being entered;

3) Respondents shall facilitate Petitioner's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address in Maryland;

4) Respondents **SHALL** file a notice of compliance within two business days of Petitioner's release.  This notice must specify: (1) the date, (2) the time, and (3) the manner of departure (e.g., transport to a bus station, designated drop-off location, or other arrangements).  Additionally, the notice must include (4) a description or copies of all discharge and travel documents provided to Petitioner at the time of release;

5) Respondents **SHALL NOT** remove Petitioner to any third country to which he does not have a removal order without first providing him with constitutionally and regulatorily compliant procedures;

6) The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

**IT IS SO ORDERED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

6